UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3629-GW(JCx) | Date | July 26, 2019 |
|---|---|---|---|
| Title | *Realtime Adaptive Streaming LLC v. Google LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **RULING REGARDING GOOGLE DEFENDANTS' MOTION TO SUPPLEMENT PROTECTIVE ORDER TO INCLUDE PATENT ACQUISITION BAR [48]**

Attached hereto is the Court's Ruling Regarding Google Defendants' Motion to Supplement Protective Order to Include Patent Acquisition Bar [48].

:

Initials of Preparer   JG

<u>**Realtime Adaptive Streaming LLC v. Google LLC et al**</u>, Case No. 2:18-cv-03629-GW-JC
<u>**Realtime Adaptive Streaming LLC v. Adobe Systems Inc.**</u>, Case No. 2:18-cv-09344-GW-JC
Ruling Regarding Google Defendants' Motion to Supplement Protective Order to Include Patent Acquisition Bar

I.   **Introduction**

On April 5, 2019, Defendants Google LLC and YouTube, LLC (collectively, "Google Defendants") filed a motion to supplement the protective order in their case to add a patent acquisition bar.  Docket No. 48.  After the motion was fully briefed, a hearing was held on May 6, 2019.  Docket No. 53, 55.  The Court issued an order that deferred a final determination on the dispute pending supplemental briefing.  Docket No. 60.  Google Defendants subsequently submitted their supplemental brief and the accompanying declaration of Stanley Charles Ross Wolf, a Director of Engineering at Google.  Docket No. 64, Docket No. 64-1 ("Wolf Decl.").  Plaintiff Realtime Adaptive Streaming LLC ("Realtime") filed their responsive supplemental brief soon after.  Docket No. 68.  A second hearing was held where the dispute was discussed on July 18, 2019.  After the second hearing, the parties submitted a joint statement presenting their competing positions regarding the tentative ruling that they received at the July 18 hearing.  *See* Docket No. 79.

For the reasons stated herein, the Court would **GRANT** the Motion and **AMEND** the Protective Order in this case as further explained in the Conclusion Section of this Order.

II.   **May 14, 2019 Order**

After a hearing on May 14, 2019, the Court issued an Order finding that Google Defendants must first establish good cause for an acquisition bar.  Docket No. 60 at 9.  The Court explained that a good cause showing as discussed in *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010), should be "merely step one" in the analysis for determining whether an acquisition bar should be entered.  Docket No. 60 at 7.  After recognizing a split in district court authority regarding how to conduct the remainder of the *Deutsche Bank* analysis, the Court stated:

> The Court believes that a middle approach is appropriate. As stated, an initial demonstration of good cause is necessary, which requires some showing to establish the nature of the information at issue and how much harm would be caused by its inadvertent disclosure. Once that initial showing has been made, the Court would agree with [*Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS, 2019 WL 343242, at *2-3 (D. Mass. Jan. 25, 2019)]

1

> and the minority view that the moving party must, essentially, show that its proposed acquisition bar "reasonably reflect[s] the risk presented by the disclosure of proprietary confidential information." *Deutsche Bank*, 605 F.3d at 1381.  Once the proper scope of the acquisition bar is established, specific counsel may submit evidence to show that he or she should be exempted from it.  *Intellectual Ventures*, 2019 WL 343242, at *3 ("the majority approach places an unrealistic burden on the moving party and directly contradicts the Federal Circuit case law . . . . [P]arties seeking an acquisition bar would have little to no knowledge of the day-to-day practice for any particular attorney for the opposing party.").

Docket No. 60 at 8-9.  The Court concluded by stating, "Google Defendants will need to first persuade the Court that they have met their burden to show good cause that an acquisition bar is warranted" and deferred ruling on the motion, directing the parties to file supplemental briefs on the issue.  *Id.* at 9.

**III.   Analysis**

    A.   <u>Whether the Google Defendants Have Shown Good Cause</u>

To support their argument that good cause warrants an acquisition bar, Google Defendants submit the Wolf Declaration.  *See generally* Wolf Decl.  Wolf states that Google Defendants have a "proprietary system" for "transcoding" digital data uploaded to various relevant products and services.  *See* Wolf Decl. ¶¶ 3, 6.  Wolf explains that "'[t]ranscoding' generally refers to the process of taking digital video data that is uploaded in one format and converting it to one or more other video formats."  *Id.* ¶ 7.  Wolf states that "although the Transcoding Infrastructure utilizes publicly available specifications for digital video standards . . . it decides how to process and transcode each video based on certain confidential business rules."  *Id.* ¶ 8.  Wolf states, "[t]he source code that implements the Relevant Products and the Transcoding Infrastructure is highly confidential and is maintained as a Google trade secret."  *Id.* ¶ 9.  Wolf further states that Google Defendants "prepare[ ] and maintain[ ] technical documentation that summarizes and depicts the functionality of the Relevant Products and the Transcoding Infrastructure."  *Id.* ¶ 10.  Wolf asserts that Google Defendants "devote[ ] substantial resources to keeping its source code and technical documentation secret" by (1) restricting employee access, (2) requiring employees with access to maintain confidentiality, and (3) tasking engineering teams to secure the source code and documentation from unauthorized disclosure.  *Id.* ¶ 12.  Wolf states that "inadvertent public disclosure of Google's source code and technical documentation would have a detrimental impact on Google's business" and lead to additional harm.  *Id.* ¶¶ 14-15.

Realtime responds with two arguments. *See* Docket No. 68. First, Realtime's argument − that it is not a "Google competitor" − is a red herring in the context of an acquisition bar. As Realtime itself acknowledges in the same page of its responsive supplemental brief, "[t]he risk that an acquisition bar is actually designed to address is that of **counsel** inadvertently relying on a party's confidential information in **advising clients** . . . ." *Id.* at 2 (emphasis added). Second, Realtime's argument that Google Defendants have failed to show good cause because they have not identified specific documents "that bear[ ] any relevance to patent acquisition" is equally unpersuasive. *See id.* Realtime has not demonstrated that a document-by-document identification is necessary or appropriate at this stage in the analysis. Indeed, the document-by-document analysis is much more suited to consideration in the context of selecting the appropriate confidentiality designation for a document under the provisions of the Protective Order itself. Although the question was not directly addressed by *Deutsche Bank*, its references to broader categories of potentially sensitive information warranting the entry of a prosecution bar also supports the conclusion that a document-by-document analysis is not required at this stage. *See Deutsche Bank*, 605 F.3d at 1381 ("For example, financial data and other sensitive business information . . . would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar. On the other hand, information related to new inventions and technology under development . . . may pose a heightened risk of inadvertent disclosure by counsel involved in . . . competitive decisionmaking as described above."). An alternative argument that the general category of information identified by Wolf – technological information related to Google Defendants' accused products – is not relevant to an acquisition bar (which involves counseling clients in acquiring technology) is also not persuasive. *Id.*; *see also* Wolf Decl. ¶ 15.

Having considered the statements made by Wolf regarding the nature of Google Defendants' information and Realtime's arguments to the contrary, the Court finds that the Google Defendants have met their burden of showing that good cause warrants the entry of an acquisition bar in this case and proceeds to consider whether the scope of the proposed bar is appropriate.

    B.    <u>Whether the Scope of Google Defendants' Proposed Acquisition Bar Is Fully Supported</u>

Google Defendants' proposed acquisition bar states:

> Absent written consent from the Designating Party, any individual who receives and accesses "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

3

> ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information designated by Google that relates to the functionality of Google's technology shall not be involved in activity relating to: (i) the acquisition of patents or patent applications (for any person or entity) relating to methods or systems for video compression; or (ii) advising or counseling clients regarding the same. This Acquisition Bar shall not prohibit counsel from advising clients on other legal matters involving patents, including validity and settlement negotiations. This Acquisition Bar shall begin when "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information designated by Google that relates to the functionality of Google's technology is first received and accessed by the affected individual and shall end two (2) years after final disposition of this action as provided herein.

Docket No. 64 at 4. Under this step of the analysis, the Court finds it appropriate to consider "the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar." *Deutsche Bank*, 605 F.3d at 1381.

In its supplemental brief, Realtime focuses on challenging the scope of information designated to trigger the bar. *See* Docket No. 68 at 3. Realtime notes that the proposed acquisition bar broadly refers to "information designated by Google that relates to the functionality of Google's technology," even though Google Defendants and Wolf focus on Google Defendants' "transcoding system" in their supplemental filings. *Id.* Realtime also argues that the acquisition bar should be limited to Google Defendants' source code because Wolf only specifies the source code – and not Google Defendants' "technical documentation" – as trade secret. *Id.*

Based on Google Defendants' supplemental statements and evidence, the Court agrees with Realtime that the proposed acquisition bar is overbroad in that it should be limited to, essentially, "Transcoding Infrastructure."[1] *See* Wolf Decl. ¶ 6 ("I refer to this transcoding functionality, including the source code that implements the transcoding functionality, as the 'Transcoding Infrastructure.'"). The Court is not persuaded, however, that confidential information must necessarily reach the level of a trade secret for it to be appropriately covered by an acquisition bar, as Realtime suggests. Wolf explains why the disclosure of both its source code and its technical documentation would cause it competitive harm or possibly allow third parties to "attempt to acquire or obtain intellectual property rights for the purpose of disrupting Google's business." *Id.*

---

[1] The Court is also cognizant of Realtime's observation that Google Defendants' bar is overbroad to the extent it can encompass "public standards such as the H.264 and H.265," and expects information to be appropriately designated under the Protective Order to avoid this concern. Docket No. 68 at 3 n.1.

4

¶ 15. Whether or not Realtime is correct in its reading of the Wolf Declaration as stating that Google's source code is trade secret but its technical documentation is not, Wolf's statements overall are found sufficient under *Deutsche Bank*. *Deutsche Bank*, 605 F.3d at 1381.

In the parties' supplemental joint report, Google Defendants request that in addition to transcoding infrastructure, the acquisition bar should independently cover any technical documents and source code related to Google Defendants' accused products. Docket No. 79 at 2-3. Google Defendants specifically state:

> [i]n response to Realtime's discovery requests, Google has produced highly confidential source code and technical documentation that describe the functionality of the accused products beyond their utilization of, or interaction with, the Transcoding Infrastructure . . . As Mr. Wolf explains, *both* categories of documents and code are highly confidential, maintained as trade secrets, and pose a significant competitive risk to Google in the event of inadvertent disclosure.

*Id.* at 3 (emphasis in original). The Court is not persuaded that Google Defendants' assertions in the joint report are supported by the Wolf Declaration, which either focuses on discussing the confidential nature of transcoding infrastructure alone or "Relevant Products *and* the Transcoding Infrastructure" together. *See also* Wolf Decl. ¶¶ 3-7 (providing introductory information about the accused products and "transcoding infrastructure," but only referring to the transcoding functionality as implemented via a "proprietary system"). There is insufficient information provided in the Wolf Declaration relating to the technology of the accused products separate and apart from the transcoding infrastructure to support extending an acquisition bar to independently apply to any confidential information concerning the accused products.[2]

However, Realtime states in the joint report that after further meeting and conferring with Google Defendants, "Realtime offered a compromise option which would have expanded the bar to persons accessing *source code* of 'the accused products.'" Docket No. 79 at 4 (emphasis added). Given Realtime's apparent agreement to expand the scope of the bar in this manner, and further given the heightened confidentiality concerns that often accompany disclosure of a company's

---

[2] Of course, this information would still otherwise be covered and protected by the rest of the Protective Order governing this case. The issue for purposes of this analysis is simply whether any person with access to any source code or technical documentation for an accused product in this matter must necessarily be subject to a patent acquisition bar, regardless of whether the accessed source code or technical documentation relates to Google Defendants' transcoding infrastructure or not.

source code, the Court finds Realtime's proposal to be a reasonable compromise.

Realtime drops a general footnote at the end of its 3.5-page supplemental brief purporting to preserve all of its other arguments opposing Google Defendants' proposed acquisition bar.³ *See id.* at 4 n.2 ("Google's proposed bar is also improper and overbroad for the reasons stated in Realtime's opposition."). Having considered the remainder of the *Deutsche Bank* factors and Realtime's arguments, the Court finds Google Defendants' proposed acquisition bar otherwise satisfies the factors and Realtime's arguments are unpersuasive.

### IV. Conclusion

For the reasons stated herein, the Court would **GRANT** the Motion and **AMEND** the Protective Order between Realtime and Google Defendants to include the following language providing for an acquisition bar:

> Absent written consent from the Designating Party, any individual who receives and accesses (i) "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information designated by Google that relates to the functionality of Google's transcoding infrastructure technology or (ii) "HIGHLY CONFIDENTIAL – SOURCE CODE" information designated by Google that relates to the functionality of Google's accused products shall not be involved in activity relating to: (i) the acquisition of patents or patent applications (for any person or entity) relating to methods or systems for video compression; or (ii) advising or counseling clients regarding the same. This Acquisition Bar shall not prohibit counsel from advising clients on other legal matters involving patents, including validity and settlement negotiations. This Acquisition Bar shall begin when (i) "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information designated by Google that relates to the functionality of Google's transcoding infrastructure technology or (ii) "HIGHLY CONFIDENTIAL – SOURCE CODE" information designated by Google that relates to the functionality of Google's accused products is first received and accessed by the affected individual and shall end two (2) years after final disposition of this action as provided herein.

To the extent Realtime seeks to have specific counsel exempted from the acquisition bar, it can make the appropriate request in the form of a joint stipulation or motion. *See, e.g. Deutsche Bank*, 605 F.3d at 1381 ("the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO

---

³ The parties were permitted to file supplemental briefs up to ten pages providing their positions regarding this dispute. *See* Docket No. 60 at Cover Page, 9.

does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.").